**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TERRY DAUM,

Plaintiff,

v.

9:15-CV-1083 (DNH/DJS)

CAPTAIN DEVLIN, SERGEANT CROSS, and CORRECTIONS OFFICER C. STICKNEY,

Defendants.

**APPEARANCES:** **OF COUNSEL:**

TERRY DAUM
Plaintiff, pro se
97-A-1295
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

LETTIA JAMES
New York State Attorney General
Attorneys for Defendants
The Capitol
Albany, New York 12224

THOMAS A. CULLEN, ESQ.
Assistant Attorney General

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

## I. INTRODUCTION

This case is before the Court after its return from the Second Circuit Court of Appeals. *Daum v. Devlin*, 2023 WL 4199066 (2d Cir. June 26, 2023). As set forth in the Amended Complaint and as relevant here, Plaintiff alleges that Corrections Officer Chad

Stickney sexually abused him during two pat frisks that occurred at the Clinton Correctional Facility on April 4, 2014. Dkt. No. 30, Am. Compl. at ¶¶ 12-17. The Amended Complaint also alleges that Defendants Capt. Devlin and Sgt. Cross were present during the second improper pat frisk and failed to intervene. *Id.* at ¶¶ 17, 49, 60-61.

Presently pending is Defendants' Motion to Dismiss the lawsuit upon the ground that each Defendant is entitled to qualified immunity. Dkt. Nos. 194 & 194-1. Plaintiff has opposed the Motion and has submitted his appellate brief which exhaustively details why, in Plaintiff's view, Defendants are not entitled to qualified immunity at this stage of the proceedings. Dkt. No. 196.[1] Defendants have submitted a Reply. Dkt. No. 197. For the reasons that follow, it is recommended that the Defendants' Motion to Dismiss be granted in part and denied in part.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action in September 2015. Dkt. No. 1. He was granted IFP status, and, upon initial review, the Court concluded that various claims were sufficiently pled, including an Eighth Amendment excessive use of force claim against Defendant Chad Stickley, and an Eighth Amendment failure to protect claim against other Defendants. Dkt. No. 7. Plaintiff then sought permission to file an amended complaint, which was granted. Dkt. No. 29. That Amended Complaint added First Amendment retaliation claims as well as a supervisory liability claim. Dkt. No. 30.

[1] While the brief was prepared by appellate counsel, and while the Plaintiff is proceeding pro se in this Court, the Court finds it appropriate to accept and consider this well-crafted and thoughtful filing.

Part of the Plaintiff's original claim related to the conduct of two pat frisk searches conducted by Defendant Stickney, first in the yard at the Clinton Correctional Facility, and second, in an interview room a short time later that evening. Compl. & Amend. Compl. The Second Circuit succinctly summarized the Plaintiff's allegations regarding the improper search as follows:

> At the time of the alleged incidents, Daum was an inmate at Clinton Correctional Facility in Dannemora, New York. Daum alleges that correctional officers sexually abused him during two pat-frisks. First, after setting off a metal detector, a correctional officer pat frisked Daum, which allegedly involved the officer groping "plaintiff's genitals several times," "utiliz[ing] his hand to aggressively rub against plaintiff's rectum several times (like a credit card swipe)," and "attempt[ing] to jam his fingertips into plaintiff's rectum." Am. Compl. ¶ 12. After Daum called his brother about the incident, his brother called the facility to complain. Following his brother's complaint, Daum was allegedly taken from his cell and, before "at least ten officers," was subject to a second pat-frisk. *Id*. ¶ 16. He allegedly "experienced a credit-card swipe against his rectum" again. *Id.*

*Daum v. Devlin*, 2023 WL 4199066, at *1.

Upon the mandated initial review, the District Court determined that the allegations of an Eighth Amendment violation directly associated with the two pat down frisks were insufficient under established law and directed that the claim be dismissed. Dkt. No. 7 at pp. 9-10. ("In sum, the allegations in plaintiff's complaint are not sufficiently extreme, repetitive, or severe to give rise to constitutional violation.") That rationale was maintained in the Court's review of the proposed Amended Complaint. Dkt. No. 29 at pp. 10-11. As a result, Plaintiff's case proceeded to trial only in connection with the excessive use of force claims, the First Amendment retaliation claims, and the associated failure to

intervene claims. At trial, the Jury found in favor of the Defendants on all claims. Dkt. Nos. 173 & 174.

On appeal, the Second Circuit determined that the District Court had misapplied the applicable standard articulated in *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015) ("*Crawford I*"), which had been decided shortly before the Court's initial decision, but after the pat-down searches in question in the lawsuit. *Daum v. Devlin*, 2023 WL 4199066, at *1 ("Here, the district court dismissed Daum's sexual-abuse claim for failure to allege "any improper purpose," "repetitive[ ] or severe" conduct, and "any physical injury as a result of the incidents." App'x at App 46-47. But to state an Eighth Amendment sexual-abuse claim under *Crawford I*, Daum was not required to allege "physical injury" or repetition. *Crawford I*, 796 F.3d at 257. Moreover, Daum's allegations about (1) the short gap in time between his brother's complaint and the second pat-frisk and (2) the lack of any intervening incidents giving rise to suspicion permit a plausible inference that the second pat-frisk lacked a "penological purpose" and was "undertaken with the intent to . . . humiliate." *Id.*).

On appeal, Defendants raised the issue of their entitlement to qualified immunity. However, the Second Circuit directed that the matter be remanded so that the qualified immunity defense could be addressed initially at the District Court level. *Daum v. Devlin*, 2023 WL 4199066 at *2.

## III. DISCUSSION

Qualified immunity is a powerful and multifaceted defense to individual monetary liability under 42 U.S.C. §1983. While the statute itself makes no reference to this

doctrine, the Supreme Court, relying on the background of tort liability and various policy concerns, established this protection in favor of governmental officials. *Wood v. Strickland*, 420 U.S. 308 (1975); *Pierson v. Ray*, 386 U.S. 547 (1967). Relative to the present case, qualified immunity applies to a correction official's conduct which is said to have violated the Eighth Amendment's prohibition against cruel and unusual punishment unless the unlawfulness of his or her conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

The Supreme Court has spoken regarding the concept of clearly established law.

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know. The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotations and citations omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation omitted). As a result of this standard and its application, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As an initial matter, the Court will assume that the facts as alleged in the Amended Complaint regarding one or both of the pat frisk searches, if accepted as true, violate the Eighth Amendment prohibition against cruel and unusual punishments. *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009). The next critical factor for determining qualified immunity, therefore, is to consider the acts of the named Defendants in light of the legal landscape that existed at the time of the event: April 4, 2014.

As a general matter, the Supreme Court had at that time recognized the applicability of the Eighth Amendment standard to cases involving correctional facilities in two generalized areas: prison condition cases and use of force cases. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994). As to the latter, the Eighth Amendment prohibits forceful conduct that was performed maliciously and sadistically for the very purpose of causing harm, rather than in a good faith attempt to maintain or restore order, or for some other legitimate penological purpose. *Id.*; *Hudson v. McMillian,* 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

As to physical searches of incarcerated individuals, it should be noted that such searches are a common incident in prison life. *Henry v. Annetts*, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("Random cell searches and pat frisks are a necessary and routine part of prison life."). According to applicable guidelines, pat down searches are regularly utilized in federal and state facilities on both a routine and random basis, are designed to locate contraband, and to curb its introduction and movement. *See* 28 C.F.R. §§ 552.10 & 552.11 and 7 N.Y.C.R.R. § 305.1; *see also Shaw v. Prindle*, 661 F. App'x 16, 19 (2d Cir. 2016).

The Second Circuit Court of Appeals has provided specific, albeit changing, guidance regarding the application of Eighth Amendment standards to cases involving searches of inmates. In *Boddie v. Schnieder*, Plaintiff alleged that he was physically and sexually harassed by a female corrections officer, who on one occasion touched his penis and called him a "sexy black devil," and then 15 days later, pinned him to a door and pressed "her whole body . . . against [his] penis." 105 F.3d 857, 860 (2d Cir. 1997). The Second Circuit ruled that the alleged limited conduct, even if true, did not violate the Eighth Amendment. *Id.* at 862. The Second Circuit did acknowledge that sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment. *Id.* at 860-61. ("There can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation."). However, reviewing Boddie's allegations, the Second Circuit held that the "small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent … do not involve a harm of federal constitutional proportions." *Id.* at 861.

That decision remained the guiding law in the Second Circuit until August 11, 2015, when the Circuit re-examined the issue in a case arising out of the Northern District of New York. In that case two inmates, James Crawford and Thaddeus Corley, claimed that Defendant Prindle fondled their genitals during facility pat frisks, and that other defendants who were present were deliberately indifferent to the inmates' plight. *Crawford I*, 796 F.3d at 255. As to Plaintiff Corley, Defendant Prindle allegedly told him

that he was going to make sure Corley did not have an erection, and thereafter ordered him to stand against the wall and spread his legs, and when he did so, Defendant Prindle paused to fondle and squeezed Corley's penis. *Id.* As to Crawford, it was alleged that Correction Officer Prindle grabbed and held his penis, and asked "what is that?" Upon the response, "that's my penis, man" Prindle pushed him to the wall, continued to squeeze and fondle the area and roamed his hands down Crawford's thigh. *Id.*

District Court Judge Norman A. Mordue dismissed the Plaintiffs' claims of an Eighth Amendment violation based upon *Boddie*. *Crawford v. Cuomo*, 2014 WL 897046, at *5 (N.D.N.Y. Mar. 6, 2014). Upon review, the Second Circuit called into question the continued application of *Boddie* to circumstances such as that presented in the case, and reversed Judge Mordue. *Crawford I,* 796 F.3d at 254. The Circuit noted that contemporary standards of decency had evolved since *Boddie* was decided 15 years earlier, and that the outcome in *Boddie* may have been different if decided in 2015. *Id*. at 259-60. In particular, the Court noted that while there was no allegation of repetitive conduct, there was also no penological interest that was being served by Defendant's conduct. *Id.* at 258. ("There is no penological justification for checking to see if an inmate has an erection."). Further, the timing of the search (in the middle of defendant's Corley's visit with his wife), together with the Defendant's statements, were sufficient to suggest that the frisk was a pretext for sexual abuse. *Id.* Similarly, as to Crawford, the squeezing and fondling of Plaintiff's genitalia, together with the roaming of the COs hands and simultaneously taunting comments, was not done in pursuit of, or in the course of, any

legitimate duties. *Id.* at 258-59. In sum, the Second Circuit noted that the application of *Boddie* "must change as the basic mores of society change." *Id.* at 260.

That did not end the matter, however. The Circuit sent the matter back to Judge Mordue to determine if the Defendants were entitled to qualified immunity. Based upon *Boddie*, the District Court granted the immunity defense. On appeal, the Circuit affirmed. *Crawford v. Cuomo*, 721 F. App'x 57, 60 (2d Cir. 2018) ("*Crawford II*"). The Court rejected Plaintiff's argument that the unconstitutional nature of Defendant's conduct was clearly established in 2011, in light of the language of *Boddie* itself. The Second Circuit panel in *Crawford II* noted that the facts of *Boddie* and *Crawford* were "quite similar" and that "[a] reasonable officer could therefore have believed that the sexual abuse here alleged, even if it might violate state criminal law or subject him to tort liability, did not violate the Eighth Amendment. At a minimum, any constitutional distinction between this case and *Boddie* was not clearly established in March 2011." *Id.* at 59. The Circuit also rejected Plaintiffs' other arguments regarding out-of-district cases, the evolving nature of the Eighth Amendment, or the development of legislative protections. *Id*. at 59-60. In sum, the application of the Eighth Amendment standard to the facts, especially in light of the previous *Boddie* decision, were not clearly established in a sufficient degree, and therefore the Defendant corrections officers were entitled to qualified immunity. *Id*.

Plaintiff Daum has opposed the present Motion for qualified immunity by reiterating the same arguments raised in *Crawford II*, but these arguments are not compelling. As noted in the Amended Complaint, the first search was, as Plaintiff concedes, instigated by a metal detector alarm. *See* Dkt. No. 30-2 at ¶ 20. Daum's

allegations regarding the method of the pat frisk search are similar to, and possibly less severe, that those alleged in *Boddie* and *Crawford I*, yet *Boddie* was the established precedent in this jurisdiction at the time and indicated that the particular facts alleged did not rise to level of an Eighth Amendment violation. While *Crawford I* came to a different legal conclusion, that holding was rendered after this incident, and when the precise issue of qualified immunity was raised in *Crawford II*, it was granted. *See also Hayes v. Dahlke*, 976 F.3d 259, 276 (2d Cir. 2020) (holding that the illegality of 5-8 minute pat frisk conducted in 2016, involving officer's grabbing and massaging and pressing his genitals into plaintiff's behind, was clearly established by *Crawford* in 2015).

Plaintiff asks that the Court look to out-of-circuit cases that existed in 2014 in an effort to deny qualified immunity. That argument would have more merit if the Second Circuit had not already spoken on the precise application of the Eighth Amendment to pat frisk searches such as this. Evidence of decisions of state law or of other circuits is relevant only where there is an "absence of binding precedent'" *Sloley v. VanBramer*, 945 F.3d 30, 42 (2d Cir. 2019).

In the present case, it would be a hard argument to say that every reasonable corrections officer in the state of New York should have been aware of the existence and effect of out-of-Circuit decisions that conflicted with the Second Circuit's holding in *Boddie*, especially when lower Courts within the circuit continued to faithfully apply it. The Circuit itself has pointed to the date of the *Crawford I* decision as the operative date when the change in the application of the Eighth Amendment to such searches was clearly

established. *Hayes v. Dahlke*, 976 F.3d at 276. Accordingly, qualified immunity is appropriately granted as to the first search.

The second search that occurred later, while less invasive, has certain additional complications as noted by the Circuit in the remand decision, particularly: the need for the search, the motivation for the search, as well as the number of people that observed it. As of 2014, there were in circuit decisions that indicated that it was an Eighth Amendment violation to conduct a pat down or other personal search where there was no institutional need or justification for it to begin with. A circumstance, for example, when inmate was searched both before and after transport even though the officers maintain constant contact with the inmate, could give rise to a claim that the second search violated the Constitution as it was done to demean, or for no legitimate penological reason. *See Hodges v. Stanley*, 712 F.2d 34, 35-36 (2d Cir. 1983) ("The second search took place shortly after the first, and Hodges had been under continuous escort. Under these circumstances it seems clear that there was no possibility that Hodges could have obtained and concealed contraband. Thus the second search appears to have been unnecessary. We therefore cannot say that Hodges has failed to state a constitutional claim.").

In this Court's view, because of the nature of the Motion presented, and the present posture of the case, the issue of qualified immunity with regard to the second search cannot yet be decided. There exist material factual issues regarding the justification for the search that need to be developed and presented to the Court by way of a summary judgment motion for this issue to be properly determined. For example, though not intended to be a definitive list, the Court may need to know how long a period of time

elapsed between the two searches; what was the Plaintiff's location during the intervening time; was the Plaintiff under constant supervision; what were the regulations, training, and practice with regard to pat frisk searches in general, and in relation to a meeting with a supervisor regarding an inmate complaint in particular; what exactly happened during the search; who was present; what was said; and what facts were the named Defendants aware of at the time of the second search. With that information in hand, the Court may well be in a position to decide the determinative question: could a reasonable correctional official have believed that there was a justification for performing the second pat frisk search? That question cannot be answered on the present record.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendant Stickney's Motion to Dismiss the claims against him arising out of the *first* pat frisk search that occurred at or near the recreation yard at Clinton Correctional Facility on April 4, 2014 be **GRANTED** and all claims associated with that first pat frisk search be dismissed; and it is further

**RECOMMENDED**, that the Motion to Dismiss of Defendants' Stickney, Cross, and Devlin, in relation to the *second* pat frisk that occurred later in the evening at or near the B-Block interview room, be **DENIED** with leave to renew by way of a properly filed summary judgment motion; and it is further,

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: July 11, 2024
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

[2] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).