**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TERRY DAUM,

                              Plaintiff,

               v.                                                    9:15-CV-1083
                                                                      (DNH/DJS)

CAPTAIN DEVLIN, SERGEANT CROSS,
and CORRECTIONS OFFICER C. STICKNEY,

                              Defendants.

**APPEARANCES:**                                   **OF COUNSEL:**

TERRY DAUM
Plaintiff, *pro se*
97-A-1295
Attica Correctional Facility
Box 149
Attica, NY 14011

LETITIA JAMES                                      MATTHEW GALLIGER, ESQ.
New York State Attorney General                    Assistant Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

## I.  INTRODUCTION

In this long running civil rights action, Plaintiff Terry Daum ("Plaintiff" or

"Daum") alleges that Defendant Corrections Officer Chad Stickney ("Defendant

Stickney") sexually abused and humiliated him during a pat-frisk that occurred at the

- 1 -

Clinton Correctional Facility on April 4, 2014.  Dkt. No. 30, Am. Compl., at ¶¶ 10-17.

Defendants Captain Devlin ("Defendant Devlin") and Sergeant Cross ("Defendant

Cross") were alleged to have observed that improper pat-frisk and failed to intervene.  *Id*.

at ¶¶ 16 & 49.  Presently, all Defendants have made a Motion for Summary Judgment

upon the renewed grounds that they are entitled to the defense of qualified immunity.

Dkt. No. 225; Dkt. No. 225-11, Defs.' Mem. of Law at pp. 6-8.  Plaintiff has opposed the

Motion and has asked to rely upon his appellate papers, including a Reply Brief dated

March 8, 2023.[1]  Dkt. No. 230.  Plaintiff then submitted a supplement to his opposition

papers.  Dkt. No. 231.  Defendants have also submitted a Reply.  Dkt. No. 234.

For the reasons that follow, it is recommended that the Defendants' Motion for

Summary Judgment be granted and that the case be dismissed.

## II.  PROCEDURAL HISTORY

This case is before the Court after its return from the Second Circuit Court of

Appeals.  *Daum v. Devlin*, 2023 WL 4199066 (2d Cir. June 26, 2023).  Plaintiff originally

commenced this multi-claim action in September 2015.  Dkt. No. 1, Compl.  Part of the

Plaintiff's original claim related to the conduct of two pat-frisk searches conducted by

Defendant Stickney, first in the recreation yard at the Clinton Correctional Facility[2], and

second in an interview room on B-block before Defendants Devlin and Cross later that

---

[1] That request is granted.  However, and as noted hereafter, the present Motion is one for Summary Judgment where the Court considers the established facts, and not a motion to dismiss or initial review where the Court accepts the non-conclusory allegations contained in the Complaint.

[2] Clinton Correctional Facility is a maximum security level facility for males.  https://doccs.ny.gov/location/clinton-correctional-facility

evening. *See generally* Compl. & Amend. Compl. The Second Circuit in its decision summarized the Plaintiff's allegations regarding the improper search as follows:

> At the time of the alleged incidents, Daum was an inmate at Clinton Correctional Facility in Dannemora, New York. Daum alleges that correctional officers sexually abused him during two pat-frisks. First, after setting off a metal detector, a correctional officer pat frisked Daum, which allegedly involved the officer groping "plaintiff's genitals several times," "utiliz[ing] his hand to aggressively rub against plaintiff's rectum several times (like a credit card swipe)," and "attempt[ing] to jam his finger tips into plaintiff's rectum." Am. Compl. ¶ 12. After Daum called his brother about the incident, his brother called the facility to complain. Following his brother's complaint, Daum was allegedly taken from his cell and, before "at least ten officers," was subject to a second pat-frisk. *Id*. ¶ 16. He allegedly "experienced a credit-card swipe against his rectum" again. *Id.*

*Daum v. Devlin*, 2023 WL 4199066, at *1.

Upon initial review, this Court concluded that the Eighth Amendment excessive use of force claim against Defendant Stickney and an Eighth Amendment failure to protect claim against Defendant Delvin were sufficiently pled in the Complaint. Dkt. No. 7. However, the Court concluded that the allegations of an Eighth Amendment violation directly associated with the two pat-frisks were insufficient under established law. *Id.* at pp. 9-11 ("In sum, the allegations in plaintiff's complaint are not sufficiently extreme, repetitive, or severe to give rise to constitutional violation."). As a result, Plaintiff's pat-frisk claims were dismissed. *Id.*

On September 20, 2016, Plaintiff's Amended Complaint was accepted as the operative pleading. Dkt. No. 29; Am. Compl. Upon review of the Amended Complaint, the Court found that—in addition to the Eighth Amendment excessive use of force claim against Defendant Stickney and the Eighth Amendment failure to protect claim against

Defendants Devlin and Cross based on the excessive force incident, which were pled in the original Complaint and had survived initial review—the following additional claims pled in the Amended Complaint survived review and required a response by Defendants: First Amendment retaliation claims again Defendants Delvin, Cross, and Stickney, among other Defendants; and supervisory claims against Superintendent/Captain Steven Racette.  Dkt. No. 29.

Following Defendants' motion for summary judgment and the dismissal of Defendant Racette and various other Defendants, the case proceeded to trial in April of 2021 only in connection with Plaintiff's Eighth Amendment claims against Defendant Stickney for excessive use of force, Eighth Amendment claims against Defendants Devlin and Cross for their associated failure to intervene, and First Amendment claims against Defendants Stickney, Devlin, and Cross for retaliation.  Dkt. Nos. 97, 100, & 171-72.  At trial, the jury found in favor of Defendants on all counts.  Dkt. Nos. 173 & 174.

On appeal, the Second Circuit determined that the District Court's initial review decision had misapplied the applicable Eighth Amendment standard articulated in *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015) ("*Crawford I*"), which had been decided shortly before the District Court's decision, but *after* the pat-frisk searches in question in the lawsuit.  *Daum v. Devlin*, 2023 WL 4199066, at *1. The Circuit held:

> Here, the district court dismissed Daum's sexual-abuse claim for failure to allege any improper purpose, repetitive or severe conduct, and any physical injury as a result of the incidents.  But to state an Eighth Amendment sexual-abuse claim under *Crawford I*, Daum was not required to allege physical injury or repetition. Moreover, Daum's allegations about (1) the short gap in time between his brother's complaint and the second pat-frisk and (2) the lack of any intervening incidents giving rise to suspicion permit

- 4 -

> a plausible inference that the second pat-frisk lacked a penological purpose and was undertaken with the intent to humiliate.

*Id.* (internal quotations, citations, and alterations omitted). The Second Circuit directed that the matter be remanded so that the qualified immunity defense could be addressed at the District Court level. *Id.* at \*2. The case was then returned to the Northern District.

Thereafter, Defendants filed a Motion to Dismiss on qualified immunity grounds, which Plaintiff opposed. Dkt. Nos. 194, 196, & 197. A Report-Recommendation and Order was issued by the undersigned on July 11, 2024, which recommended that the District Court grant the Motion to Dismiss based on qualified immunity as to the first pat-frisk search that occurred at or near the recreation yard as a result of the metal detector being triggered, but deny the Motion as to the second search that occurred later in the evening at or near the B-block interview room on the grounds that factual issues needed to be developed through the discovery process regarding the need for that subsequent search. Dkt. No. 204 at p. 12. That Report-Recommendation was adopted by the District Court on August 15, 2024. Dkt. No. 206.

Discovery then ensued, including the production of prison policies, reports, and the deposition of the Plaintiff. Upon the conclusion of that discovery process, Defendants have now renewed their request to dismiss Plaintiff's final claim against them under the doctrine of qualified immunity. As part of their Summary Judgment Motion, defense counsel submitted a Statement of Material Facts. Dkt. No. 225-10. Plaintiff indicated only limited objections to that Statement but has submitted a detailed response to the Motion. Dkt. Nos. 230 & 231.

### III. LEGAL STANDARDS

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citations omitted).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora*

*Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Qualified Immunity

Qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (internal quotation and alterations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all

but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted).

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know. The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotations and citations omitted).

## IV. DISCUSSION

At the onset of this analysis, the Court assumes that the facts presented on the Motion regarding the remaining pat-frisk search, if accepted as true and viewed in the light most favorable to the Plaintiff, would be sufficient to indicate a violation of the Eighth Amendment prohibition against cruel and unusual punishment under the standard announced in *Crawford I*. *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009). As a

result, the Court is left only to consider in this Motion the acts of the named Defendants in light of the legal landscape that existed at the time of the subject event on April 4, 2014, and whether a reasonable correctional official could have believed, in light of that established law, that his or her conduct did violate clearly settled law.  Critical to the analysis, in the Court's view, is the justification for performing the B-block pat-frisk search at issue.

The Court's prior Report-Recommendation and Order, dated July 11, 2024, exhaustively reviewed applicable case law on this issue, and that analysis is incorporated here.  Dkt. No. 204.  To briefly summarize, in 1997 the Second Circuit acknowledged that sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment.  *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997) ("There can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation.").  However, in *Boddie*, the Second Circuit held that the "small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent … do not involve a harm of federal constitutional proportions." *Id.* at 861 (citations omitted).

That decision remained the guiding law in the Second Circuit until August 11, 2015, when the Circuit re-examined the issue in *Crawford I*, a case involving a pat-frisk during which the plaintiff's penis was intentionally groped.  *Crawford I*, 796 F.3d at 254. In *Crawford I*, upon a *de novo* review of the district court's dismissal of the claim, the Second Circuit called into question the continued application of *Boddie*. *Id.*  In particular,

the Court noted that while there was no allegation of repetitive conduct, there was also no penological interest that was being served by the defendant's conduct. *Id.* at 257-58. ("There is no penological justification for checking to see if an inmate has an erection."). Further, the timing of the search (in the middle of a visit between one of the plaintiffs, Corley, and his wife), together with the defendant's statements, were sufficient to suggest that the frisk was a pretext for sexual abuse.[3] *Id.* The Circuit noted that contemporary standards of decency had evolved since *Boddie* was decided 15 years earlier, and that the outcome in *Boddie* may have been different if decided in 2015. *Id.* at 259-60. In sum, the Second Circuit noted that the application of *Boddie* "must change as the basic mores of society change." *Id.* at 260 (quotations omitted).

The Circuit then sent the matter back to the district court to determine if the defendants were entitled to qualified immunity. *Id.* at 261. Based upon *Boddie*, the district court granted the immunity defense and the Second Circuit affirmed. *Crawford v. Cuomo*, 721 F. App'x 57, 58 (2d Cir. 2018) ("*Crawford II*"). The Second Circuit panel in *Crawford II* noted that the facts of *Broddie* and *Crawford* were "quite similar" and found that:

> A reasonable officer could therefore have believed that the sexual abuse here alleged, even if it might violate state criminal law or subject him to tort liability, did not violate the Eighth Amendment. At a minimum, any constitutional distinction between this case and *Boddie* was not clearly established in March 2011.

---

[3] Similarly, as to the other plaintiff, Crawford, the squeezing and fondling of his genitalia, together with the roaming of the correctional officers' hands and simultaneously taunting comments, was not done in pursuit of or in the course of any legitimate duties. *Crawford I*, 796 F.3d at 258-59.

*Id.* at 59.  The Circuit also rejected plaintiffs' other arguments regarding out-of-district cases, the evolving nature of the Eighth Amendment, and the development of legislative protections.  *Id*. at 59-60.  In sum, the application of the Eighth Amendment standard to the facts, especially in light of the previous *Boddie* decision, were not clearly established in a sufficient degree, and therefore the corrections officers named as defendants in *Crawford* were entitled to qualified immunity.  *Id*.

As noted in this Court's decision granting in part the Motion to Dismiss based upon qualified immunity, there were issues that needed to be resolved regarding the justification for the second search.  Dkt. No. 204; *Daum v. Devlin*, 2024 WL 4133824, at *5 (N.D.N.Y. July 11, 2024), *report and recommendation adopted*, 2024 WL 3823475 (N.D.N.Y. Aug. 15, 2024).  Discovery has now clarified several issues.  First, it is evident that the Plaintiff was not under constant supervision between the time that he was at the recreation yard for the first search, and the time of the commencement of the second search.  The first search occurred at approximately 8:00 p.m. on April 4, 2014.  Dkt. No. 225-2, Pl.'s Dep. at pp. 25, 27, & 32-33.  At that point Plaintiff made one or more calls to his brother to complain about the nature of the pat-frisk search in the recreation yard and Defendant Stickney's actions.  *Id.* at pp. 33-34.  He then stayed in the recreation yard until approximately 9:45 p.m.  *Id.* at pp. 27-37.   He took a six-minute walk back to his cell without escort and then was locked in that cell for a short period of time.  *Id*. at pp. 35-39.  During that time he removed certain items from his pocket, but not all of them.

*Id.* at p. 57.  He was then instructed to go downstairs to the galley area[4], a trip that he also took unescorted.  *Id.* at pp. 37-47.

When he arrived downstairs at B-block, Defendant Devlin was at the desk.  *Id.* at p. 44.  There were numerous officers present in that location because, as explained by Plaintiff, B-block had heightened security at the time and there were extra officers dealing with a group of inmates coming in.  *Id.* at pp. 45-50.  Plaintiff describes the scene as a "mingle."  *Id.* at pp. 48-51.  He was then put in a pat-frisk position outside the office and frisked.  *Id*. at pp. 51-61.  Plaintiff believes that Defendant Devlin would have been able to see the search from his position at the desk but concedes that he does not know exactly what Defendant Devlin saw.  *Id.*  The search was conducted by Defendant Stickney.  *Id.* at p. 57.  Plaintiff described in detail the search in B-block during his deposition, and in some sense, it was less aggressive and intrusive than the previously dismissed search in the recreation yard.  *Id*. at pp. 57-60; *see also Daum v. Devlin*, 2024 WL 4133824, at *5.  However, the allegation is that Defendant Stickney ran his hand all the way up Plaintiff's leg and performed a "credit card swipe," and in doing so, used his knuckle to rub hard and slow against Plaintiff's rectum.  *Id*.

Plaintiff conceded that inmates get pat-frisk or searched for any number of reasons, and that while most of the time it is in a situation where the incarcerated individual was seen passing contraband or is going on a visit, there may be other reasons that are "beyond my wisdom."  *Id.* at pp. 62-64.  Defendants have now produced documentation and

---

[4] Plaintiff originally believed that he was traveling to B-block for a work detail, but it turned out he was actually asked to travel there for an interview by Defendant Devlin regarding Plaintiff's complaint to his brother as to the first search in the recreation yard.  *See* Pl.'s Dep. at pp. 38-39.

policies regarding the pat-frisk procedure applicable to facilities operated by the Department of Corrections and Community Supervision ("DOCCS") at the relevant time, which *require* a pat-frisk search on inmates "[t]o be interviewed by Department officials." Dkt. No. 225-5 at p. 2. Plaintiff does not dispute that he was being interviewed by Defendant Devlin. Dkt No. 230 at p. 4. The pat-frisk search includes a search by hand of an inmate's person or his or her clothes while the inmate is clothed. Dkt. No. 225-5 at p. 2. It should be supervised. *Id.* at p. 1. As explained by Defendant Devlin, the pat-frisk procedure requires the officer to reach high into the groin area. Dkt. No. 225-4.

Plaintiff makes certain additional arguments in connection with the alleged impropriety of the second search. Plaintiff claims that, pursuant to DOCCS' policies, a wand metal detector is more suitable than a pat-frisk. *See* Dkt. No. 230 at p. 3. However, the regulations specifically state that the use of a hand-held metal detector "is always appropriate to *supplement* the pat-frisk." Dkt. No. 225-5 at p. 2 (emphasis added). The regulations do not in any way indicate that, in such circumstances, a pat-frisk should not be performed.

Plaintiff argues that he should not have been allowed to proceed from his cell to B-block for the interview unescorted, and that he has been informed by unnamed Clinton Correctional Facility officers that inmate movements after 9:50 p.m. require "supervisor escort with mechanical restraints." Dkt. No. 230 at p. 3. No admissible evidence is submitted in support of this claim. Nevertheless, in light of the undisputed fact that Plaintiff was not escorted and was not restrained, the Court readily concludes that there

was a legitimate justification for performing a pat-frisk search on the Plaintiff prior to his interview with Defendant Devlin.

Plaintiff objects to the fact that his pat-frisk search was not supervised. Dkt. No. 230 at p. 3. On this Motion, however, the Court is accepting as true Plaintiff's argument that Defendant Stickney performed the pat-frisk search and that Defendant Cross was present at the time, Am. Compl. at ¶ 16, and simply considers the independent issue of whether, assuming those facts, the Defendants are nevertheless entitled to qualified immunity. Further, according to the Plaintiff, Defendant Devlin would also have been able to witness the search, *id.*, and non-party Lieutenant Silver Gray was also present. Pl.'s Dep. at p. 48.

Having determined that the pat-frisk search of Plaintiff on April 4, 2014 in the B-block was warranted for institutional and safety reasons, the Court's prior Report-Recommendation, Dkt. No. 204, readily leads to the conclusion that the way the search was conducted did not violate clearly established law as it existed at that time.

Plaintiff objects to the humiliating nature of the pat-frisk search, Dkt. No. 230 at p. 4, and notes that the DOCCS directive at issue specifically states that such searches, while being thorough, should be undertaken in a way that does "not offend the dignity of the inmate being searched." Dkt. No. 230 at p. 2; Dkt. No. 225-5 at p. 1. But as was clear from *Boddie* and *Crawford*, pat-frisk searches that were highly objectionable to the incarcerated individual did not necessarily violate Eighth Amendment standards recognized at that time.

Plaintiff further argues that the evolving nature of societal norms should have been apparent before the April 4, 2014 search, and this should be enough to prevent this defense from being raised. Dkt. No. 230 at pp. 5-6. However, qualified immunity is not determined by predictions or a perceived general sense of the community, but rather on the existing state of the law. *Boddie* was the law of the Circuit until August of 2015, when *Crawford* was decided, and that fact is confirmed by *Crawford II*. Here, the search of Plaintiff in B-block occurred well before that critical date, and because the nature of the search of Plaintiff was less objectionable and abusive than either *Boddie* or *Crawford*, qualified immunity is certainly warranted. It also follows that, if the corrections officer who conducted the search is entitled to qualified immunity upon the grounds that his conduct did not violate clearly established constitutional law, then the supervisors who may have observed that conduct are entitled to the same defense.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment arising out of the second pat-frisk search that occurred at or near B-block at Clinton Correctional Facility on April 4, 2014, be **GRANTED** and that the case be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

- 15 -

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:   February 6, 2026
            Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).